In the Matter of the LONE STAR CEMENT CORPORATION et al., Respondents, v. BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF HUDSON, Appellant.

Third Department, May 16, 1969.

102

*William E. J. Connor* for appellant.

*John J. Curran* (*Keith G. Flint* of counsel), for respondents.

GIBSON, P. J. Appeal is taken from a judgment of the Supreme Court at Special Term which granted petitioners' application in a proceeding under CPLR article 78 to require respondent-appellant Board of Education to compute and collect petitioners' school taxes for the fiscal year commencing July 1, 1968 on the basis of the assessment of petitioners' property on the 1968 assessment roll for the Town of Greenport rather than the 1967 roll actually utilized by the board. The school district includes the City of Hudson and portions of the Town of Greenport and other towns. The taxable property involved is within the portion of the school district lying within the Town of Greenport. Petitioner Lone Star Cement Corporation discontinued its manufacturing operations on the property prior to December 28, 1967, on which date it sold a large part of its manufacturing plant to petitioner Perry Equipment Corporation for dismantling and salvage, with consequent depreciation in its value. Petitioners contend that the Greenport assessment roll reflecting the taxable status date of May 1, 1968 should have been employed rather than that of the year previous when Lone Star's manufacturing operations were in progress and the value of its plant was that of a going con-

cern. Appellant contends that the applicable statutes authorize the procedure followed and that the use of 1968 assessments would have delayed collection of school taxes for some months beyond the commencement of the fiscal year in which the tax revenues were required for the operation of its schools. By presently utilizing tax assessment rolls completed in the previous calendar year, appellant bills its taxpayers on July 1, the first day of its fiscal year.

Brief reference to the mechanics of real property tax assessment generally may be helpful to an understanding of the method of assessment and levy of the school tax. The taxable status of real property in each city and town is determined annually as of the first day in May (Real Property Tax Law, § 302), *unless,* as here, a charter, local ordinance or special statute provides to the contrary (Real Property Tax Law, § 1606). The taxable status date or assessment date of a city or town for real property tax purposes is usually controlling for school district tax purposes (Real Property Tax Law, § 1302, subd. 3). A tentative assessment roll for the real property tax must be completed on or before June 1 and any changes in the tentative roll must be entered on the roll by July 15. (Real Property Tax Law, § 506, subds. 1, 2.) The completed assessment roll is to be filed with the city or town clerk by August 1 (Real Property Tax Law, § 516, subd. 1). The problem in this case arises in large part from the fact that these various enumerated dates relating to the assessment procedures may be altered by local ordinance or city charter (Real Property Tax Law, § 1606). Thus, the Town of Greenport may complete its final assessment on or before August 1 in conformity with the Real Property Tax Law (§ 516, subd. 1), but the City Charter of Hudson does not require completion of the tax roll until September (Hudson City Charter, §§ 205–208; L. 1921, ch. 669). The question, then, is whether a city school district which is constituted by several municipalities and wishes to assess taxes as of July 1, 1968, must wait until the 1968 assessment rolls for all of the constituent municipalities are completed before assessing the tax.

We turn now to the Special Term's analysis. After citing section 1302 of the Real Property Tax Law requiring that for the purpose of the levy of school taxes, valuations "shall be ascertained from the *latest final assessment roll* of the city or town" (subd. 1; emphasis supplied); that the town assessors "shall deliver the appropriate portion of the assessment roll to the school authorities * * * on or before August first" and the City Assessors shall make like delivery of the city

assessment roll "within five days after the completion and certification or verification of such assessment roll" (subd. 2); and noting that section 205 of the Charter of the City of Hudson requires the assessors to "make and complete an assessment-roll * * * on or before the first day of August in each year" (L. 1921, ch. 669, § 205); the Special Term said: "The coincidence of August first for both towns and cities in such statute as well as in the charter certainly evidences a legislative intent that the roll to be used as the latest final roll for a fiscal period commencing on July first must be the roll completed by August first since it alone is the final."

We note preliminarily, although not as dispositive of the appeal, that the Special Term opinion seems to us to place unwarranted emphasis on the "coincidence" of the August 1 dates as evidencing legislative intent. That date was fixed in the charter provision upon the charter's enactment in 1921 (L. 1921, ch. 669, § 205) but was not prescribed by the Real Property Tax Law until the time of an amendment thereof 40 years later (L. 1962, ch. 804, § 7, eff. Jan. 1, 1964), and it is unlikely that the general statute was in this case amended to accord with the special act. Indeed, the supposed "coincidence" of dates vanishes when it becomes apparent that the August 1 date in the charter provision (§ 205) is the date of a tentative roll (cf. Real Property Tax Law, § 506, a parallel statute) and not that of the "final" roll (Real Property Tax Law, § 1302, subd. 1). This follows from subdivision 2 of section 1302, which does not fix a specific date for City Assessors to deliver the roll, as it does for Town Assessors, but requires its delivery "within five days after [its] completion and certification or verification"; and, in the case of the City of Hudson, under its charter (§§ 206–208), the roll may not be "completed and subscribed" until some time in the month of September. Subdivision 2 of section 1302 gives effect to subdivision 2 of section 302 of the Real Property Tax Law providing, that, "The taxable status date of real property assessed for school district and village purposes shall be determined in accordance with sections thirteen hundred two and fourteen hundred of this chapter, respectively." This provision, incidentally, when read with the charter provisions cited, is consistent with appellant's argument that, because of equalization requirements, the town and city assessment rolls compiled in the same year must be utilized, with the result that, in appellant's view, the late date of the city assessment roll controls, and necessitates the use of the city and town rolls completed in the previous calendar year.

We find it unnecessary to reach appellant's contention respecting the equalization aspect.

As has been noted, appellant board customarily commences to collect taxes on July 1, the first day of its fiscal year, and contends that it is not compelled by law to defer its collections beyond that date and meanwhile to finance its operations by borrowing. Respondents argue that despite appellant's practice, and its necessities, perhaps, the August 1 date to which such frequent reference has been made indicates a legislative scheme inhibiting the collection of taxes before that time. We find no such legislative mandate. The time fixed for delivery of the roll, in cases in which the general statute is applicable, is on *or before* August 1; and other statutory provisions implicitly recognize the possibility of instituting collections before that time. Thus, for example, the school authorities of a city school district may confirm the school tax roll before the adoption of the budget or before the tax is voted for such year. (Real Property Tax Law, § 1302, subd. 4.) The budget for the Hudson City School District is adopted on or before June 30 (see Education Law, § 2519), well in advance of the deadline for the submission of town assessment rolls to school authorities.

In general, the statutory provisions governing school district taxation are permissive and flexible. None sets a date on which the school tax must be adopted by the Board of Education of the school district—for the tax can be confirmed by school authorities before the adoption of the school budget (Real Property Tax Law, § 1302, subd. 4) or after the adoption of the budget and commencement of the fiscal year (Real Property Tax Law, § 1306)—nor, as has been shown, must a specific assessment roll be used to compute the tax. Apparently the Legislature recognized that school districts often are composed of municipalities subject to diverse tax assessment provisions, and, therefore, did not attempt to prescribe rigid school tax assessment procedures. Absent any explicit inhibitory statute, appellant was entitled to complete its taxing procedures in such time as to enable it to commence the collection of taxes on the first day of its fiscal year. At that time " the latest final assessment roll " (Real Property Tax Law, § 1302, subd. 1) was, with respect to each municipality, that completed in the preceding calendar year.

Despite deficiencies in pleading, we treat the petition and the comprehensive affidavits on each side as sufficient to tender the legal issues underlying the controversy.

The judgment should be reversed, on the law and the facts, and the petition dismissed, with costs.

HERLIHY, AULISI, STALEY, JR., and COOKE, JJ., concur.

Judgment reversed, on the law and the facts, and petition dismissed, with costs.